**BALTODANO & BALTODANO LLP**
Hernaldo J. Baltodano (SBN 222286)
Email: hjb@bbemploymentlaw.com
Erica Flores Baltodano (SBN 222331)
Email: efb@bbemploymentlaw.com
1411 Marsh Street, Suite 102
San Luis Obispo, California 93401
Phone: (805) 322-3412
Fax:     (805) 322-3413

**BOREN, OSHER & LUFTMAN LLP**
Paul K. Haines (SBN 248226)
Email: phaines@bollaw.com
Fletcher W. Schmidt (SBN 286462)
Email: fschmidt@bollaw.com
5900 Wilshire Blvd., Suite 920
Los Angeles, California 90036
Tel: (323) 937-9900
Fax: (323) 937-9910
Attorneys for Plaintiff, the Classes,
and Aggrieved Employees

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| PATRICK A. DAVILA as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>OCB RESTAURANT COMPANY, LLC, a Minnesota Limited Liability Company; BUFFETS, INC., a Minnesota Corporation; HOMETOWN BUFFET, INC., a Minnesota Corporation; and DOES 1 through 10,<br><br>Defendants. | CASE NO. CV13-05403 PA (JCGx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:  Hon. Percy Anderson<br>Date:   August 11, 2014<br>Time:   1:30 p.m.<br>Dept.:  15 |

1

NOTICE IS HEREBY GIVEN that on Monday, August 11, 2014, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 15 of the United States District Court for the Central District of California, located at 312 North Spring Street, Los Angeles, California 90012-4701, before the Honorable Percy Anderson, Plaintiff Patrick A. Davila ("Plaintiff") as an individual and on behalf of all others similarly situated, will and hereby does hereby move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e) and 29 U.S.C. § 216(b):

1. Finally certifying the Settlement Class for settlement purposes under Rule 23(e) of the Federal Rules of Civil Procedure;

2. Granting final approval to the class action settlement based upon the terms set forth in the Stipulation of Class Action Settlement and Release ("Settlement Agreement") as fair, reasonable and adequate under Rule 23(e) of the Federal Rules of Civil Procedure;

3. Appointing Plaintiff as Class Representative for settlement purposes;

4. Appointing Hernaldo J. Baltodano of Baltodano & Baltodano LLP and Paul K. Haines of Boren Osher & Luftman, LLP as Class Counsel for settlement purposes;

5. Entering final judgment in the form of the proposed Final Approval Order filed herewith.

///
///
///
///
///
///
///
///
///

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the supporting Declarations of Hernaldo J. Baltodano, Paul K. Haines, and Tim Cunningham and exhibits attached thereto, the proposed Order, the Settlement Agreement, all other pleadings and papers on file in this action, and any oral argument or other matter that may be considered by the Court.


Dated:  July 7, 2014

Respectfully submitted,
BALTODANO & BALTODANO LLP


By:    _/s/Hernaldo J. Baltodano_____
       Hernaldo J. Baltodano, Esq.
       Attorneys for Plaintiff, the Classes and
       Aggrieved Employees

3

# **TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................1

II. FACTUAL SUMMARY ...........................................................2

    A. Plaintiff's Claims ...........................................................2

    B. This Litigation's Procedural History .................................3

    C. The Parties' Discovery and Analysis................................4

III. THIS SETTLEMENT WARRANTS FINAL APPROVAL ............................5

    A. The Settlement Is Fair, Adequate, and Reasonable..................................6

        1. The Strength of Plaintiff's Case ......................................7

        2. Risk, Expense, Complexity, and Duration of Further Litigation .....9

        3. Risk of Maintaining Class Action Status .....................................10

        4. Amount Offered in Settlement Is Reasonable Given the Realistic Value of the Claims In Light of the Litigation Risks.........................10

        5. Discovery Completed and the Status of Proceedings ...................16

        6. The Experience and Views of Counsel .........................................16

        7. The Reaction of the Class Members to the Proposed Settlement ..17

IV. THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED .............18

V. THE COURT-ORDERED NOTICE COMPORTS WITH DUE PROCESS ...18

VI. CONCLUSION...............................................................................20

# TABLE OF AUTHORITIES

**Federal Cases**

*Alonzo v. Maximus, Inc.*
     832 F.Supp.2d 1122, 1134 (C.D. Cal. 2011) ...................................................8

*Churchhill Village, L.L.C. v. General Electric*
     361 F.3d 566, 575 (9th Cir. 2004) ...................................................18

*Class Plaintiffs v. City of Seattle*
     955 F.2d 1268, 1276 (9th Cir. 1992) ...................................................6

*Eisen v. Carlisle & Jacqueline*
     417 U.S. 156, 173 (1974) ...................................................18

*Elliot v. Spherion Pacific Work, LLC*
     572 F.Supp.2d 1169, 1181-82 (C.D. Cal. 2008) ...................................................9

*In re Heritage Bond Litig.*
     546 F.3d 667, 674 (9th Cir. 2008) ...................................................6

*In Re Mego Financial Corp. Securities Litig.*
     213 F.3d 454, 459 (9th Cir. 2000) ...................................................14

*In re Syncor ERISA litigation*
     516 F.3d 1095, 1101 (9th Cir. 2008) ...................................................6

*Linney v. Cellular Alaska Partnership*
     151 F.3d 1234, 1242 (9th Cir. 1998) ...................................................15

*Lynn's Food Stores, Inc. v. United States*
     679 F.2d 1350, 1353 (11th Cir. 1982) ...................................................6

*Marshall v. Holiday Magic, Inc.*
     550 F.2d 1173, 1178 (9th Cir. 1977) ...................................................17

*Murillo v. Pacific Gas & Electric Co.*
     266 F.R.D. 468, 477-478 (E.D. Cal. 2010) ...................................................6

*National Rural Tele. Coop. v. DIRECTV, Inc.*
     221 F.R.D. 523, 526 (C.D. Cal. 2004) ...................................................9, 17

*Pacific Enterprises Securities Litigation*

    47 F.3d 373, 378 (9th Cir. 1995) ....................................................16

*Rodriguez v. West Publishing Corp.*

    563 F.3d 948 (9th Cir. 2009) ..........................................6, 7, 15

*Washington v. Joe's Crab Shack*

    271 F.R.D. 629, 641-42 (N.D. Cal. 2010) .....................................11


<u>**State Cases**</u>

*Brinker v. Superior Court*

    53 Cal.4th 1004 (2012) ..........................................................8, 11

*Thurman v. Bayshore Transit Management, Inc.*

    203 Cal.App.4th 1112, 1135 (2012) .............................................14


<u>**Federal Statutes and Rules**</u>

29 C.F.R. § 548.305 ......................................................................2

29 C.F.R. § 548.305 ......................................................................7

29 C.F.R. §778.116 ......................................................................2

Fed. R. Civ. Proc. 23(e) ...............................................................5


<u>**State Statutes and Rules**</u>

Cal. Labor Code § 226(a)..........................................................13

DLSE Opinion Letter No. 1990.09.18, p. 1 ...........................8, 13


<u>**Unpublished Cases**</u>

*Alvarez v. Nordstrom, Inc.*

    Case Nos. CV 08-05856-AHM (AJWx),

    CV 10-04378-AHM (AJWx), 2011 WL 7982552 at *7

    (C.D. Cal. May 24, 2011) ..........................................................13

*Angeles v. U.S. Airways, Inc.*

    Case No. C 12-05860 CRB, 2013 WL 622032 at *10

    (N.D. Cal. Feb. 19, 2013) ........................................................................8, 13

*Barbosa v. Cargill Meat Solutions Corp.*

    Case No. 1:11-cv-00275-SKD, 2013 WL 3340939 at *11-13

    (E.D. Cal. July 2, 2013) ................................................................................15

*Barcia v. Contain-A-Way, Inc.*

    Case No. 07cv938-IEG-JMA, 2009 WL 587844 at *5

    (S.D. Cal. Mar. 6, 2009) ...............................................................................17

*Casique v. ValleyCrest Landscape Development, Inc.*

    Case No. CV09-9114 GHK (SSx)

    (C.D. Cal. November 2, 2011)........................................................................15

*Chu v. Wells Fargo Investments, LLC*

    Case No. C 05-4526 MHP, C 05-7924 MHP, 2011 WL 672645 at *1

    (N.D. Cal. February 16, 2011)........................................................................7

*Fleming v. Covidien*

    Case No. ED CV10-01487 RGK (OPx),

    Document 236, filed August 12, 2011, at p. 5............................................14

*Gribble v. Cool Transports Inc.*

    Case No. CV 06-04863 GAF SHX, 2008 WL 5281665 at *9

    (C.D. Cal. December 15, 2008) ....................................................................16

*In re Portal Software, Inc. Securities Litig.*

    Case No. C-03-5138 VRW, 2007 WL 4171201 at *3

    (N.D. Cal. November 26, 2007) .....................................................................9

*In re Taco Bell Wage and Hour Actions*

    Case No. 1:07-cv-01314-OWW-DLB, 2011 WL 4479730 at *11

    (E.D. Cal. Sept. 26, 2011)............................................................................13

1  *Jaime v. Standard Parking Corp.*
2      Case No. CV08-04407 AHM (Rzx)
3      (C.D. Cal. June 22, 2011) ...............................................................15
4  *Lazarin v. Pro Unlimited, Inc.*
5      Case No. C11-03609 HRL, 2013 WL 3541217 at *2
6      (N.D. Cal. July 11, 2013)...............................................................7
7  *Mora v. Bimbo Bakeries USA, Inc.*
8      Case No. CV 10-3748 JAK (RZx)
9      (C.D. Cal. April 16, 2012) ............................................................15
10  *Provine v. Office Depot, Inc.*
11      Case No. 11-00903 SI, 2012 WL 2711085
12      (N.D. Cal. July 6, 2012)................................................................13
13  *Willner v. Manpower Inc.*
14      Case No. C 11-02846 JSW, 2012 WL 1570789 at *3
15      (N.D. Cal. May 3, 2012) ...............................................................13
16  *Rodriguez v. D.M. Camp &* Sons
17      Case No. 1:09-cv-00700-AWI-JLT, 2013 WL 2146927 at *4
18      (E.D. Cal. May 15, 2013) .............................................................17
19  *Schiller v. David's Bridal, Inc.*
20      Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *17
21      (E.D. Cal. June 11, 2012) .......................................................16, 18
22  *Sorenson v. PetSmart, Inc.*
23      Case No. 2:06-CV-02674-JAM-DAD
24      (E.D. Cal. December 17, 2008) ....................................................15
25  *Temple v. Guardsmark LLC*
26      Case No. C 09-02124 SI, 2011 WL 723611 at *7
27      (N.D. Cal. Feb. 22, 2011) .............................................................11
28

*Williams v. Centerplate, Inc.*

    Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-KSC,

    2013 WL 4525428 at *4

    (S.D. Cal. August 26, 2013) .......................................................................16

*Wren v. RGIS Inventory Specialists*

    Case No. C-06-05778 JCS, 2011 WL 1230826 at *10

    (N.D. Cal. April 1, 2011).............................................................................7

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    <u>INTRODUCTION.</u>**

Plaintiff Patrick A. Davila ("Plaintiff") seeks final approval of this class action settlement on behalf of hundreds of non-exempt managers of Defendants Hometown Buffet, Inc., Buffets, Inc., and OCB Restaurant Company, LLC ("Defendants").   This settlement provides substantial monetary payments in the face of hotly disputed claims for unpaid overtime wages based on Defendants' alleged miscalculation of the regular rate of pay, alleged meal and rest period violations, failure to reimburse employees for required uniform expenses, and derivative penalty claims.  In this regard, the $1,814.36 average class member recovery exceeds the average recovery in similar recent wage and hour class action settlements.  Not a single class member objected to the settlement.

In its February 13, 2014, order granting preliminary approval, this honorable Court concluded that the settlement fell within the range of possible judicial approval and, therefore, met the requirements for preliminary approval. *See* Docket Entry ("DE") No. 33 at 5.  The Court certified the following settlement class under Rule 23(e): All non-exempt managers employed by Defendants in California from July 19, 2012 to February 13, 2014.

Notice of the proposed settlement was provided via first class mail to 304 members of the Settlement Class.   Over 67% of the members of the Settlement Class filed claims, claiming approximately 75% of all of the eligible workweeks. Only a single Settlement Class member elected to opt-out of the settlement.  In light of the exemplary recovery for the Settlement Class and overwhelmingly positive response received from the Settlement Class, Plaintiff respectfully requests that the Court grant final approval.

///

///

///

1

## II.     FACTUAL SUMMARY.

### A.     Plaintiff's Claims.

Defendants Hometown Buffet, Inc., and OCB Restaurant Company LLC own and operate the Hometown Buffet restaurant chain in California and throughout the United States.  Plaintiff was employed as an hourly non-exempt manager at Defendants' Hometown Buffet restaurant in San Luis Obispo from approximately March 29, 2012 to February 2013.  *See* Declaration of Patrick A. Davila ("Davila Decl."), ¶ 2.  Plaintiff filed this action for unpaid overtime wages, premium pay for meal and rest period violations, reimbursement for required uniform expenses and related penalty claims on behalf of all of Defendants' non-exempt employees.  Specifically, Plaintiff claimed that Defendants failed to pay all overtime wages and missed meal period premiums to non-exempt employees as a result of miscalculating the regular rate of pay by failing to include the value of free meals.  Plaintiff also asserted that Defendants failed to properly make available all required rest breaks due to their allegedly unlawful rest break policy, and also failed to reimburse non-exempt employees for required black non-slip shoes.  Because of these wage and hour violations, Plaintiff also sought statutory waiting time and wage statement penalties, and civil penalties under the Private Attorneys General Act ("PAGA").

Defendants vehemently disputed Plaintiff's claims.  Among other things, Defendants maintained that they properly calculated and paid all required overtime wages and missed meal period premiums, and need not include the value of the free meals in the regular rate of pay because the proper measure of the value of the meals was the cost to the employer, which they argued was *de minimis. See, e.g.,* 29 C.F.R. § 548.305 (incremental increases of less than fifty cents per week attributable to adjustments to regular hourly rate not cognizable under the FLSA); 29 C.F.R. §778.116 ("Where payments are made to employees in the form of goods or facilities which are regarded as part of wages, the reasonable cost to the

2

employer *or the fair value of such goods* or of furnishing such facilities must be included in the regular rate."). Defendants also maintained that they provided Plaintiff and the putative class members with the opportunity to take all rest periods to which they were entitled and also asserted that non-exempt managers lawfully waived meal periods. In this regard, Defendants produced documents reflecting that they promulgated a facially-compliant rest period policy sometime after their 2012 bankruptcy. Defendants also asserted that they did not have to reimburse employees for black non-slip shoes. Consequently, Defendants asserted that Plaintiff could not establish on a class-wide basis that the alleged failure to timely pay all final wages was willful and that wage statement irregularities were knowing and intentional and resulted in actual injury.

**B.    This Litigation's Procedural History.**

On May 8, 2013, Plaintiff filed this lawsuit in San Luis Obispo County Superior Court. Declaration of Paul K. Haines ("Haines Decl."), ¶ 9. Defendants filed and served an answer to Plaintiff's complaint on July 25, 2013. *Id.* Defendants then removed this action to this Court on July 26, 2013. *See* DE No. 1. Aware of this Court's position with respect to Local Rule 23-3's requirement to move for class certification within 90 days, Plaintiff demanded that Defendants hold the Rule 26(f) Conference as soon as reasonably practicable for all parties, and personally served Defendants with multiple sets of discovery requests and 30(b)(6) deposition notices immediately after holding the conference. Haines Decl., ¶ 9. Several weeks of extensive meet and confer efforts followed, and through the meet and confer process, the parties agreed to a negotiated sampling of payroll and timekeeping data for 7 of the 78 restaurants in California. *Id.* Because of discovery delays, Plaintiff filed an *ex parte* application requesting an extension of the Local Rule 23-3 90-day limit to move for class certification which the Court granted. *See* DE Nos. 19 & 21. During this process, the parties reached an agreement to attend mediation. Haines Decl., ¶ 9.

3

After extensively reviewing the data produced by Defendants and retaining a statistical economist to analyze the payroll and timekeeping data (*See* Section II(C), *infra*), the parties participated in mediation with Mark Rudy, one of the preeminent wage and hour class action mediators in California, which ultimately resulted in a resolution with respect to all non-exempt managers.[1]  Haines Decl., ¶¶ 9-11.   During the weeks that followed, the parties continued negotiating the terms of the proposed resolution and finalized the proposed class action settlement.  Haines Decl., ¶ 11.   Plaintiff submitted his Motion for Preliminary Approval on January 13, 2014 and on February 13, 2014, this Court granted preliminary approval. *See* DE Nos. 31 & 33.  Plaintiff now moves this Court for final approval.

C.   **The Parties' Discovery and Analysis.**

Prior to mediation, the parties engaged in a significant amount of formal and informal discovery and analysis.  In addition to responding to nine sets of formal special interrogatories and requests for production, Defendants produced thousands of pages of documents, including all applicable company policies, and timekeeping and payroll data and documents for 7 of the 78 restaurant locations in California.  Haines Decl., ¶ 10.  Plaintiff reviewed and analyzed these documents and conducted further fact investigation into Defendants' meal and rest period

---

[1] As was fully briefed in Plaintiff's Motion for Preliminary Approval, after extensive meet and confer efforts between the parties and following a full day of mediation, the scope of this action was narrowed to encompass only non-exempt managers because Plaintiff only worked as a non-exempt manager after July 19, 2012, after Defendants emerged from bankruptcy.   Moreover, because Plaintiff and his fellow non-exempt managers worked an average of 110 times more overtime hours per pay period than other non-exempt employees, *see* DE No. 31 at 9:1-18, Plaintiff anticipated that he would not satisfy the typicality requirement for other non-exempt employees since he only worked as a non-exempt manager during the abbreviated putative class period.

4

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

practices, and conducted extensive legal research and analysis into the overtime, meal period, and rest period claims and Defendants' defenses thereto. *Id.*

Plaintiff retained a data analysis professional to analyse all of the payroll and timecard data produced by Defendants. Haines Decl., ¶ 11. Plaintiff conducted a comprehensive analysis of the data, which included 10,383 shifts worked by 441 managerial and non-managerial employees during the putative class period. *Id.* Consequently, Plaintiff was able to determine the average rate of pay, average number of shifts worked during a pay period, and average number of regular-time, overtime and double-time hours worked by non-exempt employees and non-exempt managers during the putative class period. *Id.* Using this data, Plaintiff was able to estimate the total amount of alleged unpaid overtime wages by extrapolating his findings to the entire settlement class, and also determined the number of "major fraction" shifts that were worked. *Id.* Although the November 2013 mediation session did not immediately result in a resolution, Plaintiff re-evaluated the potential value of his claims as a non-exempt manager and his experience as a non-exempt manager over the next several days and the parties reached the proposed settlement involving only non-exempt managers in California. *Id.*

In summary, the parties entered mediation and ultimately resolved this case only after exchanging their divergent views and analyses of the claims and defenses thereto, and a substantial amount of formal and informal information over the course of several months. This extensive exchange allowed the parties to appreciate the uncertainty, expense, and risk involved in this litigation.

## III.   THIS SETTLEMENT WARRANTS FINAL APPROVAL.

A proposed class action settlement can be "settled, voluntarily dismissed, or compromised only with the court's approval." *See* Fed. R. Civ. Proc. 23(e). Thus, in order to approve this proposed class action settlement, this Court must conclude that the proposed settlement is "fair, adequate and reasonable," and is the product

5

of arm's-length and informed negotiations. *See In re Heritage Bond Litig.*, 546 F.3d 667, 674 (9th Cir. 2008).  According to the Ninth Circuit, "there is a strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *See In re Syncor ERISA litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Judicial approval of an FLSA settlement is also necessary to effectuate a valid and enforceable release of FLSA claims. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  In this regard, pursuant to a private enforcement action under Section 16(b) of the FLSA, such as this one, a district court may approve a settlement reached as a result of contested litigation to resolve a *bona fide* dispute between the parties. *Id.* at 1355.  Thus, the Court should approve the proposed FLSA settlement if it is satisfied that the settlement is the product of contested litigation and determines that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties over FLSA coverage.  *Id.*  Because the factors in evaluating a proposed settlement under the FLSA and FRCP Rule 23 assess the same factors, Plaintiff's analysis of the Rule 23 factors is equally applicable to the settlement of the FLSA claim and Plaintiff will not repeat them here. *Compare Murillo v. Pacific Gas & Electric Co.*, 266 F.R.D. 468, 477-478 (E.D. Cal. 2010) with *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009).

### A.    <u>The Settlement Is Fair, Adequate, and Reasonable.</u>

In determining whether a proposed class action settlement is "fair, reasonable, and adequate," as required by Rule 23(e)(2) of the Federal Rules of Civil Procedure, this Court may consider some or all of the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; [2] and (8) the reaction of the class members to the proposed settlement.  *See Rodriguez*, *supra*, 563 F.3d at 963.  Plaintiff addresses each of these factors below.

### 1.     The Strength of Plaintiff's Case.

Although he steadfastly maintains that his claims are meritorious, Plaintiff acknowledges that Defendants possessed formidable defenses to liability and certification.  For example, regarding the unpaid overtime claim, Defendants asserted that the proper measure of the value of the free meals provided to non-exempt managers was the cost to the employer, which resulted only in *de minimis* augmentation of the regular rate. *See*, *e.g.*, 29 C.F.R. § 548.305 (incremental increases of less than fifty cents per week attributable to adjustments to regular hourly rate not cognizable under the FLSA); Haines Decl., ¶ 12.   In addition, Defendants argued that Plaintiff would face an uphill battle for certification since not all restaurant locations maintained records of free meals provided to non-exempt managers, and it was not company policy to do so.  Haines Decl., ¶ 12.

---

[2] This factor is not addressed because there is no governmental participant. *See, e.g., Wren v. RGIS Inventory Specialists*, Case No. C-06-05778 JCS, 2011 WL 1230826 at *10 (N.D. Cal. April 1, 2011) ("Because there is no governmental entity involved in this litigation, the seventh factor is inapplicable").  However, because Plaintiff pled a claim under PAGA, the California Labor and Workforce Development Agency will receive a payment of $3,750 should the Court grant final approval.  This payment comports with PAGA payments in other class action settlements.  *See, e.g., Chu v. Wells Fargo Investments, LLC*, Case No. C 05-4526 MHP, C 05-7924 MHP, 2011 WL 672645 at *1 (N.D. Cal. February 16, 2011) (approving PAGA payment of $7,500 to the CLWDA out of $6.9 million common-fund settlement); *Lazarin v. Pro Unlimited, Inc*., Case No. C11-03609 HRL, 2013 WL 3541217 at *2 (N.D. Cal. July 11, 2013) (approving PAGA payment of $7,500 to the CLWDA out of $1.25 million common-fund settlement).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Defendants argued that Plaintiff and the putative class members were provided with the opportunity to take all required meal periods and, moreover, had entered into valid and enforceable meal period waivers whereby non-exempt managers waived their right to a second meal period when working shifts in excess of 10 hours. *Id.* Regarding the rest period claim, Defendants asserted that they complied with their rest period obligations by making rest periods available in compliance with Wage Order 5 and *Brinker v. Superior Court*, 53 Cal.4th 1004 (2012). *Id.* As to Plaintiff's reimbursement claim, Defendants asserted that they had no obligation to reimburse employees for required non-slip black shoes, which are generally usable in the occupation. *See, e.g.*, DLSE Opinion Letter No. 1990.09.18, p. 1 (stating that wardrobe items which are generally usable in the occupation, including black shoes, need not be reimbursed); Haines Decl., ¶ 12.

Consequently, Defendants asserted that Plaintiff's waiting time penalty claims were precluded due to the fact that there existed a "good-faith" dispute that any additional overtime, meal and rest period premium wages were due. *See, e.g.*, *Alonzo v. Maximus, Inc.*, 832 F.Supp.2d 1122, 1134 (C.D. Cal. 2011) (dismissing waiting time penalty claim based on defendant employer's miscalculation of the regular rate of pay, stating, "[Defendant's] presentation of a good faith defense, based in law or fact ... negate[s] a finding of willfulness.") (alterations in original); Haines Decl., ¶ 12. Defendants also asserted that Plaintiff's wage statement claim would fail since Plaintiff could not prove that all putative class members experienced "injury" under Labor Code Section 226. *See, e.g.*, *Angeles v. U.S. Airways, Inc.*, Case No. C 12-05860 CRB, 2013 WL 622032 at *10 (N.D. Cal. Feb. 19, 2013) ("A plaintiff must adequately plead an injury arising from an employer's failure to provide full and accurate wage statements, and the omission of the required information alone is not sufficient."); Haines Decl., ¶ 12. And because Plaintiff's claim for civil penalties under PAGA was wholly dependent on the overtime, meal, and rest period claims, Defendants asserted that the PAGA claim

8

would similarly fail. *See, e.g., Elliot v. Spherion Pacific Work, LLC*, 572 F.Supp.2d 1169, 1181-82 (C.D. Cal. 2008) ("Plaintiff's claim under the Private Attorneys General Act is wholly dependent upon her other claims.  Because all of Plaintiff's other claims fail as a matter of law, so does her PAGA claim."); Haines Decl., ¶ 12.

Despite Defendants' defenses, however, Plaintiff secured a substantial recovery for the class.  This factor therefore supports final approval.  Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)(internal quotations omitted).

## 2.   Risk, Expense, Complexity, and Duration of Further Litigation.

This factor, too, supports final approval because although the parties had engaged in a significant amount of formal and informal discovery and class-wide data analysis, the parties had not yet commenced deposition discovery at the time of mediation. Haines  Decl., ¶ 13.  Plaintiff had arranged to depose Defendants' FRCP 30(b)(6) witnesses in South Carolina on all topics related to Defendants' policies for provision of free and discounted meals to non-exempt employees, calculation of the regular rate of pay, and rest period practices on November 27, 2013. *Id.* Defendants planned to depose Plaintiff in early December 2013 and move for summary adjudication on all or some of the claims. *Id.* Plaintiff also had not yet filed his motion for class certification. *Id.* Moreover, trial preparation remained for the parties as well as the prospect of appeals in the wake of a disputed class certification ruling for Plaintiff and/or adverse summary adjudication ruling. *Id.* As a result, the parties stood to incur considerable additional attorneys' fees and costs through trial.  *Id.* Therefore, this settlement avoids the risk of non-recovery and the additional, accompanying expense associated with wage and hour class action litigation. *See, e.g., In re Portal Software, Inc. Securities Litig.*, Case

9

No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. November 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").  Therefore, this factor supports final approval.

### 3.    Risk of Maintaining Class Action Status.

Plaintiff had not yet filed his motion for class certification.  However, had Plaintiff succeeded in certifying any claims, Defendants intended to decertify the claims.  Thus, absent settlement, there was a risk that there would not be a certified class at the time of trial.  This factor also supports final approval.

### 4.    Amount Offered in Settlement Is Reasonable Given the Realistic Value of the Claims In Light of the Litigation Risks.

As this Court concluded in its preliminary approval order, the settlement agreement's terms fall within the range of reasonableness. *See* DE No. 33 at 5.  As detailed below, this settlement provides a substantial monetary recovery for the settlement class in the face of hotly disputed claims.  Thus, final approval is warranted.

Regarding the overtime claim, Plaintiff's data analysis revealed that non-exempt managers worked an average of 51 hours, including 11 overtime hours, per week. Haines Decl., ¶ 15.  Plaintiff's analysis further revealed that the average value of the free meal benefit was $13.05. *Id.*  For purposes of settlement, Plaintiff assumed that the free meal benefit was provided during 75% of shifts, resulting in eight free meals per pay period. *Id.*  Finally, there were 35 bi-weekly pay periods during the putative class period between July 19, 2012 and November 19, 2013. *Id.*  Therefore, Plaintiff calculated the unpaid overtime as follows:

$13.05 value of meals * 8 meals per pay period = $104.40 per pay period

$104.40 value per pay period / 102 hours worked per pay period = $1.02 increase in hourly rate

$1.02 hourly increase * 0.5 OT Premium * 22 OT hours per pay period = $11.22 underpaid OT per pay period

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

$11.22 underpaid OT per pay period * 35 pay periods * 300 non-exempt managers = **$117,810** total potential underpaid overtime wages. *Id*. This figure assumes a 100% probability of prevailing on the merits and certification. *Id*.

With respect to the rest period claim, Plaintiff's analysis of the timekeeping records produced by Defendants reflected 10,365 "major fraction" shifts worked by the employees in the sample, which included members of both the proposed settlement class members consisting of non-exempt managers and non-management, non-exempt employees. Haines Decl., ¶ 16. Extrapolated to non-exempt managers only, Plaintiff estimated 14,297 shifts which reflected a "major fraction" of a four-hour period worked during the putative class period. *Id*. Based on an average regular rate of pay of $14.76 for non-exempt managers, Plaintiff calculated Defendants' maximum potential rest period exposure as follows: 14,297 rest period violations * $14.76 rest period penalty payment = $211,024. *Id*. This figure assumed that Defendants failed to make legally compliant rest periods available to non-exempt managers during every single "major fraction" work shift despite Defendants' argument that rest periods were made available to non-exempt managers, *see Brinker*, *supra*, 53 Cal.4th at 1028 (stating that the employer must merely "authorize and permit employees to take rest periods"), and that any missed rest periods were the result of individual choices rather than a company-wide practice. *Id*. Moreover, Defendants argued that Plaintiff faced a significant hurdle in certifying the rest period claim because rest periods need not be recorded. *See Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 641-42 (N.D. Cal. 2010) (denying certification of rest period claim because the lack of time records with respect to rest periods meant that individualized questions would predominate); Haines Decl., ¶ 16. Consequently, for settlement purposes, Plaintiff discounted the value of the rest period claim by 50% for a risk of non-certification and by an additional 50% for a risk of being unsuccessful on the merits. *See, e.g*., *Temple v. Guardsmark LLC*, Case No. C 09-02124 SI, 2011 WL 723611 at *7

11

(N.D. Cal. Feb. 22, 2011) (failing to certify rest period claim because the primary questions were individualized factual questions about how the written policies interacted with company practice); Haines Decl., ¶ 16.  Thus Plaintiff valued the rest period claim at approximately **$52,756** in potential exposure.  Haines Decl., ¶ 16.

With respect to the meal period claim, Plaintiff's analysis reflected an average of 5.1 meal period violations per bi-weekly pay period, where a non-exempt manager worked in excess of 10 hours but was not provided with a second meal period.  Haines Decl., ¶ 17.  Therefore, based on an average rate of pay of $14.76, Plaintiff estimated Defendants' meal period liability as follows: 5.1 violations * $14.76 penalty * 35 pay periods * 300 non-exempt managers = 790,398.  *Id*.  However, based on Defendants' production of meal period waivers, Plaintiff discounted the value of the meal period claim by 50% in the event of an adverse certification ruling and further discounted the claim by 50% to account for an adverse merits ruling, to arrive at **$197,560.**  *Id*.

With respect to the waiting time penalty claim, Defendants' records showed that there are approximately 76 former non-exempt managers in the putative class who separated their employment with Defendants after July 19, 2012.  Haines Decl., ¶ 18.  Based on an hourly rate of pay of $14.76, Plaintiff estimated the average waiting time penalty per former manager to be approximately $4,428 ($14.76 * 10 hours * 30 days).  *Id*.  Therefore, Plaintiff estimated Defendants' potential waiting time penalty exposure as follows: 76 separated managers * $4,428 average waiting time penalty = $336,528.  *Id*.  However, based on Defendants' potential defenses (*see* Section III(A)(1), *supra*), Plaintiff discounted the value of the waiting time penalty claim by 50% in the event of an adverse certification ruling and further discounted the claim by 50% to account for an

adverse merits ruling, to arrive at **$84,132**.[3] *See, e.g., In re Taco Bell Wage and Hour Actions*, Case No. 1:07-cv-01314-OWW-DLB, 2011 WL 4479730 at *11 (E.D. Cal. Sept. 26, 2011) (denying certification of waiting time claim based on predominance of individual inquiries as to willfulness); *Alvarez v. Nordstrom, Inc.*, Case Nos. CV 08-05856-AHM (AJWx), CV 10-04378-AHM (AJWx), 2011 WL 7982552 at *7 ( C.D. Cal. May 24, 2011) (denying certification on same grounds); Haines Decl., ¶ 18.

With respect to wage statement penalties, for purposes of settlement, Plaintiff assumed that all 300 putative class members would be able to obtain $3,450 in wage statement penalties since there were approximately 35 pay periods at issue.[4]  Haines Decl., ¶ 19.  Thus, Plaintiff estimated the potential wage statement penalties as follows:

300 non-exempt managers * $3,450 = $1,035,000.  *Id*.  However, again based on Defendants' defenses to certification and the merits, Plaintiff discounted the value of the wage statement penalty claim by 50% for a risk of an adverse certification ruling and an additional 50% to account for an adverse merits ruling, for a projected total of **$258,750**.  *See, e.g., Angeles v. U.S. Airways, Inc.*, No. C 12-05860 CRB, 2013 WL 622032 at *10 (N.D. Cal. Feb. 19, 2013) (dismissing wage statement claim for lack of injury); Haines Decl., ¶ 19.

Regarding the reimbursement claim, Plaintiff valued this claim at $100 per employee or $30,000 total, given Defendants' assertion that employers need not reimburse employees for black shoes, which are generally usable in the occupation. *See, e.g.*, DLSE Opinion Letter No. 1990.09.18, p. 1 (stating that generally usable

---

[3] *See, e.g., Provine v. Office Depot, Inc.*, No. C 11-00903 SI, 2012 WL 2711085 (N.D. Cal. July 6, 2012) (denying certification of waiting time class); *Willner v. Manpower Inc.*, Case No. C 11-02846 JSW, 2012 WL 1570789 at *3 (N.D. Cal. May 3, 2012) (dismissing waiting time claim for lack of wilfulness).
[4]  *See* Cal. Labor Code § 226(a) (stating that the penalty for violation of this section is $50 for the initial violation and $100 for each subsequent violation).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

uniform items, including black shoes, need not be reimbursed by the employer);
Haines Decl., ¶ 20.   Again, Plaintiff discounted the value of this claim by 50% for
an adverse certification ruling and by another 50% to account for an adverse merits
ruling, yielding a settlement value of **$7,500**.  Haines Decl., ¶ 20.

Finally, with respect to PAGA Penalties, Plaintiff estimated a total PAGA
exposure of $2,070,000 for PAGA penalties for the entire combined class.  Haines
Decl., ¶ 21.  Since only 25% of this total would go to the aggrieved employees,
Plaintiff used $517,500.  *Id*.  Plaintiff then discounted that figure by 50% for a risk
of losing on the merits and by an additional 50% for the risk of the Court reducing
penalties, to arrive at a projected total of $**129,375**.  *See, e.g., Fleming v. Covidien,*
Case No. ED CV10-01487 RGK (OPx), Document 236, filed August 12, 2011, at
p. 5 (reducing PAGA penalties from $2.8 million to $500,000); *Thurman v.
Bayshore Transit Management, Inc.*, 203 Cal.App.4th 1112, 1135 (2012)
(affirming trial court's finding that awarding the maximum PAGA penalties would
be unjust); Haines Decl., ¶ 21.

Using these estimated figures, Plaintiff predicted that his realistic total
recovery for the Classes would be approximately **$847,883** after discounting the
claims for non-certification and/or outright dismissal as explained above.  Haines
Decl., ¶ 22.  The proposed settlement of $700,000 therefore represents
approximately 83% of Plaintiff's reasonably forecasted recovery, including 100%
of the putative class members' actual overtime damages.  *Id*.  Given the litigation
risks involved regarding certification and the merits, Plaintiff submits that this
settlement is well within the realm of being fair, reasonable, and adequate, since
the proposed settlement compensates the class for all of their underpaid overtime
wages and provides substantial additional compensation for disputed meal and rest
break claims, and related penalty claims.  *Id*.  *See*, *e.g.*, *In Re Mego Financial
Corp. Securities Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("the [s]ettlement
amount of almost $2 million was roughly one-sixth of the potential recovery,

which, given the difficulties in proving the case, is fair and adequate"); *Rodriguez*, *supra*, 563 F.3d at 964 (upholding final settlement approval where settlement represented approximately 30% of the damages estimated by the class expert). Indeed, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotations omitted).

On a more granular level, the settlement class members who submitted valid claims will receive an average settlement payment of approximately $1,814.36, with the highest payment being $2,869.53. *See* Declaration of Tim Cunningham ("Cunningham Decl."), ¶ 13. In light of Defendants' defenses to liability and certification, this average payment amount is an excellent result for the Settlement Class, particularly when compared to similar wage and hour class action settlements involving similar-wage workers. *See, e.g., Casique v. ValleyCrest Landscape Development, Inc.*, Case No. CV09-9114 GHK (SSx) (C.D. Cal. November 2, 2011) (granting final approval of proposed class action settlement where average recovery to Settlement Class members was estimated at $345); *Jaime v. Standard Parking Corp.*, Case No. CV08-04407 AHM (Rzx) (C.D. Cal. June 22, 2011) (granting final approval of class action settlement based on average settlement class member recovery of $462.22); *Mora v. Bimbo Bakeries USA, Inc.*, Case No. CV 10-3748 JAK (RZx) (C.D. Cal. April 16, 2012) (granting final approval of settlement where average Settlement Class member recovery was $561.58); *Sorenson v. PetSmart, Inc.,* Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. December 17, 2008) (wage and hour class action settlement approved where average class member recovery was approximately $60)*; Barbosa v. Cargill Meat Solutions Corp.*, Case No. 1:11-cv-00275-SKD, 2013 WL 3340939 at *11-13 (E.D. Cal. July 2, 2013) (wage and hour class action settlement of $1,290,000 for 1,837 hourly employees yielded maximum settlement payment of $922.29 and

15

average settlement payment of $601.91); *Schiller v. David's Bridal, Inc.*, Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *17 (E.D. Cal. June 11, 2012) ("Plaintiff notes that Class Members will receive an average of approximately $198.70, with the highest payment to a Class Member being $695.78.  Plaintiff contends that this is a substantial recovery where Defendant asserted compelling defenses to liability; Plaintiff also notes several similar actions where the gross recoveries per class member were less than $90 . . . Overall, the Court finds that the results achieved are good"); *Williams v. Centerplate, Inc.*, Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-KSC, 2013 WL 4525428 at *4 (S.D. Cal. August 26, 2013) (granting final approval of class action settlement where average recovery for each class member was approximately $108).  Thus, this factor weighs heavily in favor of final approval.

### 5.   Discovery Completed and the Status of Proceedings.

As detailed above in Section II, *supra*, and in Plaintiff's Motion for Preliminary Approval, the parties engaged in a significant amount of formal and informal discovery throughout the course of this litigation, up to and through the date of mediation.  Thus, this factor also supports final approval.

### 6.   The Experience and Views of Counsel.

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995).  Here, Plaintiff is represented by competent and experienced wage and hour class action counsel who pressed Plaintiff's claims forward against a large employer who retained Ogletree Deakins, one of the largest employment-side law firms in the United States. *See* Baltodano Decl., ¶¶ 2-9; Declaration of Paul K. Haines ("Haines Decl."), ¶¶ 2-6.  This factor therefore strongly supports final approval. *See, e.g., Gribble v. Cool Transports Inc.*, Case No. CV 06-04863 GAF SHX, 2008 WL 5281665 at *9 (C.D. Cal. December 15, 2008) ("Great weight is

16

accorded to the recommendation of counsel, who are most likely acquainted with the facts of the underlying litigation.").

### 7. **The Reaction of the Class Members to the Proposed Settlement.**

A court may infer that a class action settlement is fair, adequate, and reasonable when few class members object. *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *See National Rural Tele. Coop., supra*, 221 F.R.D. at 529. Here, not a single class member filed an objection to the proposed settlement after notice was provided to the 304 Settlement Class members informing them about the terms of the proposed settlement, their estimated individual settlement payout and rights under the settlement, the amounts sought by Class Counsel in attorneys' fees and costs, and the amount sought by the Class Representative as an enhancement award. Cunningham Decl., ¶¶ 8-12. Moreover, over 66.78% of the members of the Settlement Class filed claims, and claimed nearly 75% of the NSA, a rate which exceeds those typically found in wage and hour class action settlements. *See, e.g., Barcia v. Contain-A-Way, Inc.*, Case No. 07cv938-IEG-JMA, 2009 WL 587844 at *5 (S.D. Cal. Mar. 6, 2009) (granting final approval of California class with 20% claims rate); *Rodriguez v. D.M. Camp &* Sons, Case No. 1:09-cv-00700-AWI-JLT, 2013 WL 2146927 at *4 (E.D. Cal. May 15, 2013) (granting final approval of California class with 15% claims rate); Cunningham Decl., ¶ 13. Finally, only a single class member of the 304 members of the Settlement Class elected to opt-out of this settlement (approximately 0.3%). Cunningham Decl., ¶ 11. Thus, this factor supports final settlement approval.

///
///
///

**IV.   THE CLASS CERTIFICATION ENTERED BY THE COURT IN ITS PRELIMINARY APPROVAL ORDER SHOULD BE MAINTAINED.**

In its February 13, 2014 order granting preliminary approval, this Court certified the settlement class, as defined in Section I, *supra*, for settlement purposes only. *See* DE No. 33 at 2-4.  The Court found that the Settlement Class met the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy, and satisfied the Rule 23(b)(3) requirements of predominance and superiority.  *Id.* Because circumstances have not changed, and for the reasons set forth in his motion for preliminary approval (*See* DE No. 31), Plaintiff requests that the Court finally certify the Settlement Class for settlement purposes under Rule 23(e).  *See Schiller, supra*, 2012 WL 2117001 at *8 ("As initially determined in the Court's preliminary approval order and as set forth above, the Rule 23(a) requirements for class certification have been satisfied.")

**V.   THE COURT-ORDERED NOTICE COMPORTS WITH DUE PROCESS.**

Due process requires that notice be provided to class members by the best reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974).  Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchhill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).  Here, the parties engaged CPT Group, Inc. ("CPT"), an experienced third-party settlement administrator, to mail the Class Notice and related forms to settlement class members. *See* Cunningham Decl., ¶ 3.

The concurrently-filed declaration of Tim Cunningham details the settlement administration efforts of CPT.  For example, on March 7, 2014, and via First Class mail, CPT mailed notice packets to 304 Settlement Class members. *See* Cunningham Decl., ¶ 8.  The mailing addresses contained in the Class List were

18

processed and updated using the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. *See* Cunningham Decl., ¶ 7.  The NCOA contains requested changes of address filed with the U.S. Postal Service. *Id.*  In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice Packet.  *Id.*

The notice contained information about the claims in the litigation and the terms of the settlement, explained the rights and release of claims under the settlement, the right to object to the settlement, the right to opt-out of the settlement, explained the calculation of settlement shares, included estimated individual settlement payment amounts, informed the Settlement Class of the May 6, 2014, deadline for filing a claim, objecting to the settlement or opting out, and informed them of the date, time, and location of the August 11, 2014, final approval hearing. *See* Cunningham Decl., ¶ 5, and Ex. A attached thereto.

As of June 26, 2014, no notice packets had been returned by the post office. Cunningham Decl., ¶ 10.  Twelve notice packets were re-mailed to an updated address, either at the request of Class Counsel or at the request of the Class Member. *Id.*  Ultimately, no notice packets were deemed undeliverable.  *Id.*  197 members of the settlement class submitted timely claims, along with an additional 6 claims which were submitted after the claims deadline, which Class Counsel and defense counsel agreed to treat as having been timely submitted.  *See* Cunningham Decl., at ¶¶ 13-16.  Not a single Settlement Class member objected to the settlement, and only one Settlement Class member opted out of the settlement (approximately 0.3%). *See* Cunningham Decl., ¶¶ 11 & 12.  For these reasons, Plaintiff submits that the notice procedure implemented for this settlement meets the requirements of Due Process, and requests that the Court approve the payment of $10,000 to CPT for administering the settlement. *See* Cunningham Decl., ¶ 17. ///

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

**VI.    CONCLUSION.**

For the reasons set forth herein, Plaintiff respectfully requests that the Court grant this motion and enter the order granting final approval.


Respectfully submitted,

Dated:  July 7, 2014                          BALTODANO & BALTODANO LLP


By:    _/s/Hernaldo J. Baltodano_____
       Hernaldo J. Baltodano, Esq.
       Attorneys for Plaintiff, the Classes and
       Aggrieved Employees